**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:11-CV-1829** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **LT. BECKLEY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I.     **Statement of Facts and of the Case**

A.     **Dawn Marie Ball's Litigation History**

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern.  Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7.) Furthermore, Ball is also an inmate who has reported to the court that she engages in multiple episodes of destructive, self-defeating and senseless behavior.

Much of this institutional misconduct is marked by disturbing, excretory behavior.  Indeed, a constant refrain throughout many of Ball's lawsuits is her fascination with her own bodily wastes.  For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself, her clothes, her property, and her cell, as well as her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball is also, by her own admission, an inmate with a propensity for sudden, explosive rages, as illustrated by the civil complaint which she has filed <u>Ball v. Barr</u>, No.1:11-CV-2240 (M.D.Pa.).   In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

Ball is a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball currently has more than 25 lawsuits pending before this court.[1]  Ball is

---

[1] <u>See, e.g.</u>, <u>Ball v. SCI Muncy</u>, No.1:08-CV-700 (M.D.Pa.); <u>Ball v. SCI-Muncy</u>, No. 1:08-CV-701 (M.D.Pa.); <u>Ball v. Hill</u>, No.1:09-CV-773 (M.D.Pa.); <u>Ball v. Beard</u>, No. 1:09-CV-845 (M.D.Pa.); <u>Ball v. Lamas</u>, No. 1:09-CV-846, (M.D. Pa.); <u>Ball v. Oden</u> , No 1:09-CV-847 (M.D.Pa.); <u>Ball v. Bower</u>, No. 1:10-CV-2561 (M.D.Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Struther</u>, No. 1:11-CV-1265 (M.D.Pa.); <u>Ball v. Hummel</u>, No. 1:11-CV-1422 (M.D.Pa.); <u>Ball v. Beckley</u>, No. 1:11-CV-1829 (M.D.Pa.); <u>Ball v. Sipe</u>, No. 1:11-CV-1830 (M.D.Pa.); <u>Ball v. Craver</u>, No. 1:11-CV-1831 (M.D.Pa.); <u>Ball v. Powley</u>, No. 1:11-CV-1832 (M..D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v.</u>

also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits

dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim

upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by

this plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball</u>

<u>v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the district

court dismissed this civil action, citing Ball's failure to exhaust her administrative

remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies
> with regard to the issues raised in the complaint. Plaintiff's failure to
> oppose the remaining Defendants' motion, which also seeks dismissal
> for failure to exhaust administrative remedies, renders the motion
> unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not
> properly before this Court and must be dismissed.

(Doc. 36, p.5.)

While, fairly construed, the district court's dismissal decision rested on exhaustion

grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal

---

Famiglio, No. 1:11-CV-1834 (M.D.Pa.); <u>Ball v. Eckroth,</u> No. 1:11-CV-2238
(M.D.Pa.); <u>Ball v. Campbell</u>, No. 1:11-CV-2239 (M.D.Pa.); <u>Ball v Barr</u>, No. 1:11-
CV-2240 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-10 (M.D.Pa.); <u>Ball v Giroux</u>,
No. 1:12-CV-11 (M.D.Pa.); <u>Ball v Curham</u>, No. 1:12-CV-12 (M.D.Pa.); <u>Ball v.
Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.);
<u>Ball v. Hummel</u>, No. 1:12-CV-814 (M.D.Pa.); <u>Ball v. D'Addio</u>, No. 1:12-CV-815
(M.D.Pa.) .

order itself went on to state that any appeal of this dismissal would be "deemed frivolous and not in good faith."  Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6.)

Nonetheless, Ball appealed this ruling.  (Doc. 37.)  On July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action, noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to exhaust administrative remedies. We agree with the District Court's decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44, p. 2-3).  Thus, the court of appeals' ruling, like the district court's decision, was expressly based upon Ball's failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.).  This action was also dismissed by the district court, which on this occasion considered the merits of Ball's claims and explicitly concluded that Ball had failed to state a claim upon which relief could be granted. Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs. 32, 33, and 36.) Therefore, this second dismissal involved a merits analysis of Ball's claims, and a determination that Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28

U.S.C. § 1915(g).  Ball appealed this dismissal order, <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc. 34.), but her appeal of this case was summarily denied by the court of appeals,  <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48.), and, on October 29, 2010,  this case was closed by the appellate court with the issuance of its mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]   <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48.).

Ball then filed yet another lawsuit in the case of <u>Ball v. Butts</u>, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011.  <u>Ball v. Butts,</u> No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1.)  On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted.  <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8.)  Ball appealed this dismissal. <u>Ball v. Butts</u>, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10.)  On September 21, 2011,  the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate court opinion and order spoke

---

[2]28 U.S.C. § 1915(e)(2)(B)(i) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010, ruling was tantamount to a declaration that this action was also frivolous.

unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball,

stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

In addition to these dismissals, Ball currently has at least eleven other cases[3]

pending before this court where there have been reports and recommendations issued,

or adopted, calling for dismissal of claims.

---

[3]Ball v, Eiswerth, No. 1:09-701 (M.D. Pa.); Ball v. Beard, No. 1:09-CV-845 (M.DPa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.DPa.); Ball v. Campbell, No. 1:11-CV-2239 (M.DPa.); Ball v Barr, No. 1:11-CV-2240 (M.DPa.); Ball v Giroux, No. 1:12-CV-10 (M.DPa.);Ball v Giroux, No. 1:12-CV-11 (M.DPa.); Ball v. Giroux, No. 1:12-CV-812 (M.DPa.); Ball v. Giroux, No. 1:12-CV-813 (M.DPa.);  Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.)

### B. Ball's Current Lawsuit

It is against this backdrop that Ball instituted the current lawsuit. Ball's *pro se* complaint, which was first filed on October 5, 2011, (Doc. 1.), and later amended on November 4, 2011, (Doc. 14.), names 11 corrections defendants and 2 medical defendants. (Id.) The amended complaint then sets forth an array of allegations against these defendants. These allegations fall into several categories.

First, several of these allegations relate to searches of Ball's cell which allegedly occurred in August of 2011. (Id.) In her amended complaint, Ball alleges that on August 24, 2011, Lt. Beckley escorted her from the infirmary back to the Restricted Housing Unit (RHU). According to Ball, at Beckley's direction, her cell was searched by Correctional officer Charles and Werner. Ball alleges her property was destroyed during the search, and further complains that she felt sick during this search but was required to stand outside her cell and wait for up to 45 minutes until the search was completed. Ball also alleges on August 25,2011, Major Franz told Sgt. Frey to clean out her cell. Ball further contends that another defendant, Correctional Officer Wolfe, also discarded some of her property at some unidentified date. While Ball does not discuss in detail the post-deprivation remedies which were afforded her relating to this allegedly lost property, she attached to her complaints

7

various grievance forms which she completed, forms which show that Ball actively pursued post-deprivation remedies in connection with these property loss claims. (Id.)

Ball then makes general allegations that, at various times Lt. Beckley and Correctional Officers Kile and Baldwin , harassed her, calling her derogatory names. Ball also makes a general allegation that Major Franz did not prevent this harassment, and has failed to actively investigate her complaints. (Id.)

Ball further alleges that Correctional Officer Kile delayed her mail delivery on one occasion, asserting that she did not get her mail for 24 hours. (Id.)

Ball then makes curious allegations regarding efforts by prison officials to clean up her cell on several occasions after she alleges that she vomited blood in the cell.  According to Ball, following these episodes Lt. Beckley instructed several correctional officers, defendants Frey, Kile and Baldwin, to clean up the cell.  Ball apparently considered her vomit to be evidence and viewed these efforts at hygiene as attempts to cover-up some sort of wrongdoing, although it is entirely unclear what was improper about prison officials attempting to maintain standards of cleanliness in Ball's cell after she had fouled the cell by vomiting.  (Id.)  Having protested these efforts to clean her cell and improve her hygiene, Ball then alleges without any further detail that Major Franz refused her certain otherwise undescribed "property" and "hygiene" for about approximately one week. (Id.)

Finally, Ball alleges that the correctional defendants, with the concurrence of medical staff used excessive force against her in the course of a cell extraction at the Restricted Housing Unit at SCI-Muncy in August and September, 2011, physically harming her by spraying her with OC spray, despite doctor's orders to refrain from employing such chemical agents. (Id.)

The corrections and medical defendants have responded to these allegations by independently moving to dismiss Ball's complaint. (Docs. 42 and 54.) We initially directed Ball to respond to the first motion to dismiss filed in this case by May 7, 2012, (Doc. 44.), but when Ball sought an extension of time in which to respond, (Doc. 47.), we extended Ball's respond deadline to June 18, 2012. (Doc. 50.)

Ball has not complied with this motion response deadline. Instead, on May 15, 2012, Ball sought to stay all of her multi-faceted federal court litigation, in an apparent effort to delay or avoid rulings in these cases on many ripe defense motions. (Doc. 56.) On May 15, 2012, we denied this request made by Ball, noting that there was something profoundly inconsistent in these pleadings, since Ball's motions began with factual averments which detailed a series of allegedly improper actions by prison officials, allegations which if true required immediate attention by the courts. (Doc. 57.) Yet, while Ball recited facts which cried out for action by the courts, she sought relief which would not be in her interests, or in the interests of justice, a complete

9

cessation of this litigation.  (<u>Id</u>.)  Because we believed that we owed it to Ball, and

to all of the many defendants she has sued, to promptly address the merits of her

claims, on May 15, 2012, we denied Ball's first motions to generally stay all of Ball's

litigation to some future date of her choosing.  Instead, we instructed Ball in clear and

precise terms as follows:

> In the meanwhile Ball is directed to continue to comply with the filing
> deadlines previously set by this court and IT IS ORDERED that any
> future requests for continuance or stay must be made individually by
> Ball in each of her cases along with factual averments specific to each
> particular case explaining why a stay or continuance is necessary.

(<u>Id</u>.)

Presented with this clear instruction from the court, Ball then chose to ignore

this guidance and filed another global stay request in all of her cases.  (Doc. 62.)

Indeed, in this second stay motion Ball endeavored not only to ignore the court's

prior order, but to try to ignore the court altogether by instructing the clerk's office

to present these latest stay motions to another judge.  (<u>Id</u>.)  Furthermore, Ball's

motion sought more than a stay of future litigation, she also demanded that all orders

in all of her cases entered since April, 2012, be "revoked."  (<u>Id</u>.)  We denied this

second stay motion as well, (Doc. 64.), and Ball allowed her filing response deadline

on the instant motions to dismiss to lapse.  Thus, the motions are now ripe for

resolution. For the reasons set forth below, we recommend that the defendant's motions to dismiss be granted, in part, and denied, in part.

## II.   Discussion

### A.   Motion to Dismiss-Standard of Review

The defendants have moved to dismiss this complaint, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the

Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal  conclusions.  Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to  show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## B.   Ball's Fourth Amendment Claims Fail as a Matter of Law

Judged against these standards, the Fourth Amendment claims set forth in Ball's current *pro se* complaint fail to state a claim upon which relief can be granted. At the outset, to the extent that Ball is attempting to advance a far-reaching Fourth Amendment claim in this prison setting, it is clear that her claims fail as a matter of law. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  However, in order to give force to this guarantee, government officials permitted to conduct searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010).  Factual context define what is reasonable under the Fourth Amendment.  As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell v. Wolfish, 441 U.S. 520, 559 (1979).  "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id.

Florence, 621 F.3d at 301.

Adopting this contextual approach, in Hudson v. Palmer, 468 U.S. 517 (1984), and Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed

the issue of the reach of the Fourth Amendment in a custodial setting and unequivocally foreclosed Plaintiff's claims relating to the searches of her cell in the RHU at the SCI Muncy.  In <u>Block</u> and <u>Hudson</u> the Supreme Court flatly held that the search of a cell by prison officials does not violate the Fourth Amendment.  More recently, the United States Court of Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984).  The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration.  <u>Id.</u> at 527.  Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells.  <u>Id.</u> Therefore, "the Fourth Amendment has no applicability to a prison cell."

<u>Doe v. Delie</u>, 257 F.3d 309, 316 (3d Cir. 2001).

Therefore, it is beyond argument that the plaintiff did not enjoy a privacy right in her prison cell within the RHU at the SCI Muncy and she had no constitutional right to refuse a  search of her cell.  For these reasons, plaintiff's broadly framed Fourth Amendment constitutional claims regarding the search of her cell are without any legal merit.

Moreover, the plaintiff may not assert a viable constitutional claim based upon allegations that property was lost otherwise impaired during the search about which

she complains.  Inmate due process claims arising out of the confiscation of property

are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may
> be accommodated to a prison's legitimate security needs.  See Bell v.
> Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
> [Therefore] "[A]n unauthorized intentional deprivation of property" by
> prison officials does not violate the Due Process Clause "if a meaningful
> postdeprivation remedy for the loss is available." Hudson v. Palmer, 468
> U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v.
> Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).  Pre-
> deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial components to any inmate due process claim in this

setting:  (1) the confiscation of property; and (2) an allegation that property was taken

and the prisoner was afforded no post-deprivation administrative remedy.   In this

case, Ball's complaint attaches grievances in which she clearly complains about the

loss of personal property.  These grievances, which are attached to Ball's complaint,

affirmatively show that the plaintiff was afforded post-deprivation remedies, a fact

which defeats any claims arising out of the search of her cell.

Indeed, this simple legal truth is well known to Ball who has previously had

an identical claim dismissed by the courts.  In Ball v. Oden, 425 F. App'x 88, 89 (3d

Cir. 2011) the court of appeals plainly explained to the plaintiff that these type of claims do not state a viable constitutional tort, stating that:

> We will also affirm the District Court's dismissal of Ball's claims concerning the confiscation or destruction of her property. Deprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Adequate remedies were available here: Ball could have filed a state tort action, see id. at 535, 104 S.Ct. 3194, or used the prison's grievance process, see Tillman v. Lebanon County Corr., 221 F.3d 410, 422 (3d Cir.2000).

Ball v. Oden, 425 F. App'x 88, 89 (3d Cir. 2011).

Moreover, with respect to claims of this type made by Ball, we are also constrained to note that Ball's own behavior creates extraordinary challenges for prison staff when responding to assertions that Ball's personal property has been damaged or destroyed.  For example, Ball v. Sisley, No. 1:11-CV-877 provides a telling insight into the challenges which responding to such allegations from the plaintiff present for prison officials, who were compelled in that case to explain to Ball that they could not fully document her property loss claims because:  "[Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit."  Ball v. Sisley, No. 1:11-CV-877 (Doc. 27, p.13.)

18

Set against this factual background, and viewed in light of these controlling legal tenets, in this case we conclude that Ball's loss claims fail as a matter of law and should be dismissed.

### C.   Ball May Not Sustain an Eighth Amendment Claim based Solely Upon Verbal Harassment

Further Ball has lodged claims against Lt. Beckley and Correctional Officers Kile and Baldwin , alleging that these defendants at various time harassed her, calling her derogatory names.  This claim of verbal harassment also warrants only brief consideration since:  "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment. See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")."  Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011);  Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011);  Ringgold v. Lamby, 565

19

F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007). Because Ball simply alleges that she was verbally harassed, and given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), this verbal harassment allegation also fails to state a constitutional claim.

### D. Ball's Claim that a Supervisory Defendant, Major Franz, Failed to Adequately Investigate her Various Complaints Fails as a Matter of Law

Furthermore, we find that Ball's complaint that Major Franz did not adequately investigate the various allegations that she has leveled against correctional staff clearly fails as a matter of law. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

Thus, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion

School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1

(1980). Constitutional tort liability is personal in nature and can only follow personal

involvement in the alleged wrongful conduct shown through specific allegations of

personal direction or of actual knowledge and acquiescence in the challenged

practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have
> personal involvement in the alleged wrongdoing; liability cannot be
> predicated solely on the operation of *respondeat superior*. Personal
> involvement can be shown through allegations of personal direction or
> of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
> 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior*. .
> . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); Robertson v.
> Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty,
> of the subagents or servants or other persons properly employed by or
> under him, in the discharge of his official duties"). Because vicarious
> liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008);  Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.*  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

Nor can an inmate, like Ball,  sustain constitutional tort claims against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances.  Inmates do not have a constitutional right to a prison grievance system.  See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with a response to an inmate's grievances does not support a

constitutional claim.  See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir.

2005) (involvement in post-incident grievance process not a basis for § 1983

liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison

grievance procedure does not confer any substantive constitutional rights upon prison

inmates, the prison officials' failure to comply with grievance procedure is not

actionable).  See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa.

Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does

not implicate a constitutional concern.").  As the United States Court of Appeals for

the Third Circuit recently observed when disposing of a similar claim by another

inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory
> roles in the prison system. The District Court properly dismissed these
> defendants and any additional defendants who were sued based on their
> failure to take corrective action when grievances or investigations were
> referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action must have personal
> involvement in the alleged wrongs; liability cannot be predicated solely
> on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,
> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third

Circuit has recently held that summary dismissal is appropriate "because there is no

apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In sum, in this case, fairly construed, these particular claims against defendant Franz consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with defendant Franz's response to this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, this claim should be dismissed from this case.

### E.   Ball's Various Conditions-of-Confinement Claims Fail

In addition, Ball has also advanced a series of claims that can best be characterized as conditions of confinement claims, asserting that she was required on one occasion to stand for 45 minutes while her cell was searched, a event which she found uncomfortable, and further protesting an otherwise undefined one week restriction on access to undescribed "property" and "hygiene".  With respect to these claims, the guiding legal standards are clearly defined:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal

civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 272 (3d Cir. 2003).

In a prison setting, courts frequently rebuff inmate complaints like those made here relating to isolated instances of momentary discomfort for inmates or brief episodes regarding provision of hygiene supplies, finding that those isolated claims do not state an infraction of a constitutional dimension. Thus, isolated instances where inmates are briefly uncomfortable do not state an Eighth Amendment violation.[4]  Furthermore, courts have repeatedly held that inmate Eighth Amendment

---

[4]Indeed, such claims routinely arise, and are routinely rejected as Eighth Amendment violations, in the context of access to bathroom facilities, where it has repeatedly been held that inmates' momentary discomfort is not a matter of constitutional dimension.  <u>See</u> <u>Revels v. Vincenz</u>, 382 F.3d 870, 875 (8th Cir.2004) (A momentary deprivation of the right to use the bathroom, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation); <u>Knop v. Johnson</u>, 977 F.2d 996, 1013 (6th Cir.1992) (holding that inmates' being required to urinate occasionally in their cells when officers were unavailable to take them to the toilet did not violate the Eighth Amendment); <u>Vacca v. Scott</u>, 119 F.Appx. 678, 679 (5th Cir.2005) (finding that, although plaintiff averred that defendants acted with deliberate indifference in denying him access to a bathroom, at most he alleged that he suffered generalized pain and discomfort, which is insufficient to state an Eighth Amendment violation); <u>Abdur–Reheem–X v. McGinnis</u>, 198 F.3d 244 (6th Cir. Nov.12, 1999) ("the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets); <u>Whitted v. Lazerson</u>, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (stating that the alleged violation was not objectively serious where the inmate was continually told he had to wait a few minutes to go to the toilet and the inmate ultimately urinated on himself after waiting an hour and a half), <u>cited by Locke v. Sobina</u>, CA 10-66 ERIE, 2011 WL

claims, like those made here, which rest upon an isolated alleged failure to provide personal hygiene supplies to a prisoner.  See e.g.,Banks v. Mozingo, 423 F. App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419 F.App'x 135 (3d Cir. 2011)(denying inmate claim involving 7 day alleged denial of hygienic material); Fortune v. Hamberger, 379 F.App'x 116 (3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic material); Benjamin v. Fraser, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days without feminine hygiene products and toilet paper did not establish a constitutional violation); Stead v. Skinner, 10-4526, 2011 WL 3882809, *4 (N.D.Ill., Sept 2, 2011). As the court of appeals has observed, such claims cannot rest upon "a mere isolated episode of inadvertence, but [instead require proof of] persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).   Thus, Ball's complaints relating to these specific conditions of her confinement do not amount to matters of constitutional dimension and these claims should also be dismissed.

---

841368 (W.D. Pa. Mar. 8, 2011).

Having premised a number of condition of confinement claims on the alleged lack of hygiene in the prison, Ball then–ironically–levels a complaint against prison officials for providing her with excessive hygiene in her cell.   Specifically, Ball makes a curious claim regarding efforts by prison officials to clean up her cell on several occasions after she alleges that she vomited blood in the cell.   According to Ball, following these episodes Lt. Beckley instructed several correctional officers, defendants Frey, Kile and Baldwin, to clean up the cell.   While the precise tenor of her claim is murky, Ball apparently regarded her vomit as evidence of some sort and considered these efforts at hygiene as attempts to destroy evidence.   Thus, the legal premise behind Ball's unusual claim is that prison officials engaged in unconstitutional spoliation of evidence when they cleaned up vomit in Ball's cell.

Besides providing a disturbing insight into Ball's views on matters of personal hygiene, this claim fails for a more fundamental reason.   It is well settled that there is "no authority that allows for a freestanding spoliation action under federal law and, to the extent that he sought to invoke the District Court's supplemental jurisdiction, Pennsylvania has not recognized an independent action for spoliation.   See Pyeritz v. Commonwealth, 956 A.2d 1075, 1082 (Pa.Commw.Ct.2008), allowance of appeal granted, 600 Pa. 640, 969 A.2d 1183 (2009)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 694-95 (3d Cir. 2011).   Therefore, Ball's odd claim of

spoliation, standing alone, simply does not state a claim upon which relief can be granted.

**F.      Ball Cannot Base an Interference With Mail Claim Simply Upon an Alleged One-Day Delay in Delivering Her Mail**

Ball further alleges that Correctional Officer Kile delayed her mail delivery on one occasion, asserting that she did not get her mail for 24 hours. (Id.)  With respect to such claims as they pertain to incoming inmate mail, Ball should understand that prison regulations governing receipt of mail are valid if they are:

> reasonably related to legitimate penological interests. To reach this determination, [the United States Supreme Court in] Turner [v. Safley] prescribes a four-part test. We must consider: (1) whether there is a valid, rational connection between the prison regulation and a legitimate governmental interest; (2) whether alternative means of exercising the right in question remain open to inmates; (3) the impact accommodation of the asserted prisoner right will have on the prison generally; and (4) whether there is an absence of ready alternatives. Turner, 482 U.S. at 89-90, 107 S.Ct. 2254.

Nasir v. Morgan, 350 F.3d 366, 371-72 (3d Cir. 2003).

As for outgoing inmate mail:  "The applicable test from [Procunier v.] Martinez has two elements: (1) that the regulation must further an important or substantial government interest unrelated to the suppression of expression; and (2) that the regulation be no greater than necessary for the protection of that interest.  Martinez, 416 U.S. at 413, 94 S.Ct. 1800."  Nasir v. Morgan, 350 F.3d 366, 374 (3d Cir. 2003). Thus, Ball cannot assert some broad challenge to prison mail handling policies.

28

Quite the contrary, consistent with the First Amendment, prison officials can, should and must in many instances briefly delay the delivery of mail in accordance with these constitutionally valid Department of Corrections policies governing inmate mail.  See, e.g., Robinson v. Department of Corrections, 327 F. App'x 321 (3d Cir. 2009);  Nasir v. Morgan, 350 F.3d 366, 371-72 (3d Cir. 2003).

Moreover, the facts alleged by Ball–which appear to entail a one day delay in mail delivery–simply do not state a constitutional infraction.  Indeed, the United States Court of Appeals for the Third Circuit has expressly rejected such claims and held that inmate civil rights are not implicated in isolated instances where "the mailing or delivery of [prisoner] legal mail was delayed for a few days." Blanchard v. Fed. Bureau of Prisons, 428 F. App'x 128, 130 (3d Cir. 2011).  This claim is, therefore, legally bankrupt and must be dismissed.

**G.    Ball May Not Maintain a Claim Against Defendant Clemens, Who is Named in the Caption of the Case, But As to Whom Ball Makes No Well-Pleaded Allegations in the Body of Her Complaint**

Further Ball names one defendant, Physician Assistant Clemens, in the caption of this case, but makes not factual averments against Clemens in the body of this amended complaint.  Ball may not proceed in this fashion when leveling allegations against an individual defendant.  It is well-established that a properly pled complaint "requires more than labels and conclusions, and a formulaic recitation of the elements

29

of a cause of actions will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555.

Rather, "[f]actual allegations must be enough to raise a right to relief above the

speculative level." <u>Id.</u>   Therefore, where a plaintiff merely lists a defendant in the

caption of the case, without setting forth any further factual basis for a claim against

him in the body of this pleading, this style of pleading is plainly inadequate to state

a claim against a government official and compels dismissal of this defendant.

<u>Hudson v. City of McKeesport</u>, 241 F. App'x 519 (3d Cir. 2007) (affirming dismissal

of defendant who was only named in caption of case.)[5]

### H.   **Ball's Excessive Force Claim is Not Subject to Dismissal at the Outset of this Lawsuit**

While many of Ball's claims fail as a matter of law, we find that there is one

claim that cannot be disposed of on the pleadings alone.  Ball has made an excessive

---

[5]While the body of Ball's complaint contains no reference to defendant
Clemens, we observe that an exhibit attached to the complaint makes a cryptic
assertion that Clemens declined the plaintiff's demands that she be photographed
after she had engaged in some unpleasant exchange with staff. If this assertion of
some type of spoliation through inaction by Clemens is the reed upon which Ball's
claim against this defendant rests, then Clemens is entitled to a judgment in his
favor as a matter of law since there is "no authority that allows for a freestanding
spoliation action under federal law and, to the extent that he sought to invoke the
District Court's supplemental jurisdiction, Pennsylvania has not recognized an
independent action for spoliation. <u>See</u> <u>Pyeritz v. Commonwealth</u>, 956 A.2d 1075,
1082 (Pa.Commw.Ct.2008), <u>allowance  of appeal granted</u>, 600 Pa. 640, 969 A.2d
1183 (2009)." <u>Paluch v. Sec'y Pennsylvania Dept. Corr.</u>, 442 F. App'x 690, 694-95
(3d Cir. 2011).

force claim against correctional defendants Beckley, Cooper, Smith, Curham, Karchner, as well as Dr. Familgio, alleging that these defendants authorized the use of OC spray during a September 2011 cell extraction despite knowing that Ball was not medically cleared for exposure to such chemical agents.

Ball faces an exacting burden of proof in advancing this claim. Eighth Amendment excessive force claims entail a showing of some subjective intent to injure. In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Since the keystone to analysis of an Eighth Amendment excessive force claim entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)–excessive force claims often turn on factual disputes which cannot be resolved as a matter of law. As the United States Court of Appeals for the Third Circuit has aptly observed:

> [T]he Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of

> force as excessive and unjustified. <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). [J]udgment [as a matter of law] in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." <u>Whitley</u>, 475 U.S. at 322, 106 S.Ct. 1078; <u>see also</u> <u>Sampley v. Ruettgers</u>, 704 F.2d 491, 495 (10th Cir.1983) (holding that wantonness exists when a prison guard intends to harm an inmate).

> <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000).

Consistent with this fact-bound approach to litigation of these claims, there are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" <u>Id.</u> at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham v. Connor</u>, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison

excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

Given the frequently fact-bound approach which applies to these claims, we conclude that this specific claim is not amenable to resolution on the pleadings through a motion to dismiss. Rather, any resolution of this particular claim requires consideration of matters outside the pleadings, either through a properly documented summary judgement motion, or at trial. Accordingly, in the current posture of this case, it is recommended that the motion to dismiss this claim be denied.

## III.   Recommendation

Accordingly, for the foregoing reasons IT IS RECOMMENDED that the defendants' motions to dismiss, (Docs. 42 and 54.), be GRANTED in part and DENIED in part as follows: All claims and all defendants should be dismissed from this action, except for–

33

1.      The excessive force claim brought by the plaintiff against correctional

        defendants Beckley, Cooper, Smith, Curham, Karchner, as well as Dr.

        Familgio, a claim which requires consideration of matters outside the

        pleadings, either through a properly documented summary judgment

        motion, or at trial.

The parties are further placed on notice that pursuant to Local Rule 72.3:

  Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections. The briefing requirements set
forth in Local Rule 72.2 shall apply. A judge shall make a de novo
determination of those portions of the report or specified proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record. The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Submitted this 13th day of July 2012.

                                        *S/Martin C.  Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge

34